IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ) | | |
| ) | | |
| Plaintiff, ) | 8:09CR313 | |
| ) | | |
| vs. ) | FINDINGS AND | |
| ) | RECOMMENDATIONS | |
| LUIS IBARRA-PENUELAS, ) | | |
| ) | | |
| Defendant. ) | | |

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ) | | |
| ) | | |
| Plaintiff, ) | 8:09CR318 | |
| ) | | |
| vs. ) | FINDINGS AND | |
| ) | RECOMMENDATIONS | |
| CARLOS RAMIREZ, ) | | |
| ) | | |
| Defendant. ) | | |

This matter is before the court on Luis Ibarra-Penuelas' (Ibarra) and Carlos Ramirez's (Ramirez) Motions to Suppress (Filing No. 26 in 8:09CR313 and Filing No. 15 in 8:09CR318). Ibarra and Ramirez are charged in their separate Indictments with possession with the intent to distribute one kilogram or more of substances containing heroin on or about June 29, 2009, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1) (Filing No. 1 in 8:09CR313 and Filing No. 1 in 8:09CR318). Ibarra and Ramirez seek to suppress all evidence obtained by law enforcement officers as a result of the illegal search of a hotel room on June 29, 2009 (Filing No. 26 in 8:09CR313 and Filing No. 15 in 8:09CR318).

On January 13, 2010, the court held a combined evidentiary hearing on the motions. Ibarra was present with his counsel, Ernest H. Addison, Jr. and Ramirez was present with his counsel, Wesley S. Dodge. Assistant United States Attorney Nancy Svoboda represented the United States. During the hearing, the court received into evidence a photo of Hector Cruz (Ex. 1); a photo of brown work boots (Ex. 2); a photo of Ibarra (Ex.

3), a photo of black shoes (Ex. 4); a photo of Ramirez (Ex. 5); a photo of brown shoes (Ex. 6); a photo of two pairs of shoes (Ex. 7); a copy of Hector Cruz's permanent resident card (Ex. 8); Hector Cruz's identification cards (Ex. 9); a reservation receipt from Econo Lodge on 22nd street in Omaha (Ex. 10); and a CD-ROM of an interview with Ibarra (Ex. 11). The court heard the testimony of Nebraska State Patrol (NSP) Investigators Stephen Rasgorshek (Investigator Rasgorshek) and Alan Eberle, Jr. (Investigator Eberle). A transcript (TR.) of the hearing was filed on January 22, 2010 (Filing No. 34 in 8:09CR313 and Filing No. 33 in 8:09CR318). On January 27, 2010, Ramirez filed a brief in lieu of a closing argument (Filing No. 34 in 8:09CR318). On January 29, 2010, Ibarra made a motion to extend time to file a post hearing brief (Filing No. 35 in 8:09CR313), which was granted (Filing No. 36 in 8:09CR313); however, Ibarra did not submit a post hearing brief. On February 5, 2010, the government notified the court it would not be submitting a final brief. The motions were deemed submitted February 5, 2010.

## FINDINGS OF FACT

Investigator Eberle is an Investigator for the NSP Commercial Interdiction Unit (TR. 61-62). Investigator Eberle's duties are to monitor and observe individuals and luggage at areas of mass transit, such as bus stations, train stations, and airports in order to detect criminal activity (TR. 62). On June 29, 2009, Investigator Eberle began his shift at the bus station at 5:00 a.m. (TR. 63). Investigator Eberle approached Juan Perez (Perez) and Juan Amaya-Armenta (Amaya-Armenta) at around 5:30 a.m. (TR. 63, 86). Perez and Amaya-Armenta were traveling with one-way tickets from San Diego, California to Newark, New Jersey (TR. 66). The tickets were purchased in cash and within minutes of the bus departure (TR. 66). Investigator Eberle searched Perez and Amaya-Armenta with their consent and located two kilograms of heroin in Perez's and Amaya-Armenta's shoes (TR. 63, 85, 99, 105). Investigator Eberle did not find any weapons or other contraband (TR. 85). After the arrests, Investigator Eberle conducted a post-arrest interview with both individuals (TR. 63). Investigator Eberle learned from the interviews there was another individual with heroin in his shoes traveling with Perez and Amaya-Armenta (TR. 33, 64,

2

107). Perez and Amaya-Armenta described the individual as a male wearing light blue jeans and a dark shirt with a white logo on the front (TR. 33-34, 64). Neither Perez nor Amaya-Armenta could provide a name of the other individual (TR. 87). Investigator Eberle testified when Perez and Amaya-Armenta were taken into custody, he did not conduct a background search of either Perez or Amaya-Armenta (TR. 87).

After learning the information from Perez and Amaya-Armenta, Investigator Eberle, Investigator Rasgorshek, and Investigator Richard Leutter (Leutter), all of the NSP Commercial Interdiction Unit, and Kelly Kramer of the Nebraska National Guard Counter Drug Unit, initiated a search at the bus station for an individual in light blue jeans and a dark shirt with a white logo and were unable to locate him (TR. 64). Investigator Eberle interviewed the bus driver and obtained additional information related to Perez and Amaya-Armenta (TR. 64-65). Investigator Eberle learned from the bus driver there were three missing passengers, excluding Perez and Amaya-Armenta (TR. 65). Further, Investigator Eberle learned the three passengers were traveling a similar route as Perez and Amaya-Armenta (TR. 65). Two of the three missing passengers, Ibarra and Ramirez, had purchased in cash one-way tickets from San Diego, California to Newark, New Jersey, while the third passenger, Cruz, had purchased in cash a one-way ticket from Burbank, California to Newark, New Jersey (TR. 67).

Once the investigators learned of the missing passengers, the investigators searched the luggage underneath the bus and located a suspicious bag (TR. 84). Investigator Eberle and Investigator Rasgorshek presented this bag to each passenger aboard the bus and asked each passenger whether the suitcase belonged to them (TR. 32-33, 84). None of the passengers claimed the suitcase (TR. 33). The suitcase was considered abandoned and was then searched (TR. 33). During the search of the abandoned suitcase, the officers were able to find an identification card belonging to Hector Cruz (Cruz) (TR. 16, 83; Ex. 8).

Investigator Rasgorshek informed Investigator Eberle that a cab had recently departed the bus station with three individuals (TR. 68). While Investigator Eberle inquired into the three missing passengers' ticket information, Investigator Rasgorshek called various cab companies to determine whether they had recently dispatched a cab to pick

up three individuals at the bus station (TR. 33, 68). Investigator Eberle, with Investigator Leutter, left the bus station and began checking area motels and hotels for the three individuals (TR. 68). The closest hotel to the bus station was the Best Western on 30th street (TR. 69). Investigator Eberle arrived at the Best Western hotel and made contact with management, who directed the investigators to speak with housekeeping personnel (TR. 69). Investigator Eberle showed the housekeeping employee Cruz's identification card (TR. 70). The employee informed Investigator Eberle she had seen an individual who looked like the person in the photograph and that the individual was wearing light blue jeans and a dark shirt with a white logo (TR. 70).

During Investigator Eberle's interview with management and the housekeeping employee, Investigators Leutter and Rasgorshek also learned the three individuals did not enter the hotel, but had taken another cab to the Comfort Inn on 13th street (TR. 70). Investigators Eberle, Leutter, and Rasgorshek then drove to the Comfort Inn (TR. 70). The Investigators made contact with management and viewed hotel video surveillance which showed three individuals exit a cab in front of the hotel and walk in a northeasterly direction toward McDonald's (TR. 71-72). Investigator Eberle recognized Cruz from Cruz's identification card and Ramirez, as he wore light blue jeans and a dark shirt with a white logo (TR. 72). Further, Investigator Rasgorshek noticed two of the individuals appeared to be walking "heavily-footed or not normal" (TR. 72). After watching the video, Investigator Eberle believed he would find the same amount of heroin in their shoes as he did with Perez and Amaya-Armenta (TR. 105).

When Investigator Eberle arrived at McDonald's, Investigator Eberle asked employees whether three individuals had recently been in the McDonald's (TR. 73). One of the employees stated they provided the three individuals with a phone book and informed Investigator Eberle that they were looking for a cab (TR. 73). Investigator Leutter again called various cab companies and was told three individuals were picked up from the McDonald's area and were taken to the Econo Lodge on 22nd street (TR. 73). Investigators Eberle, Leutter, and Rasgorshek then met at the Econo Lodge around 7:40 a.m. (TR. 73, 91). Investigator Rasgorshek had arrived before Investigators Eberle and Leutter and spoke with the Econo Lodge management (TR. 73-74).

Investigator Rasgorshek asked management if three individuals checked into the Econo Lodge and whether one of the individuals looked like the person on Cruz's identification card (TR. 17; Ex. 8). The manager informed the officers a man matching the photo had arrived with two other men and had rented Room 220 (TR. 17, 74). The manager also provided a copy of the receipt which showed the room was rented to Cruz (TR. 17; Ex. 10).

Investigator Eberle went to Room 220 at 7:55 a.m. along with five other officers (TR. 74-75, 91). Investigator Eberle was armed and wore his raid gear, as did the other officers (TR. 75). The officers also had a ram for the door (TR. 75-76). Another officer was stationed outside the hotel (TR. 94). Before going to Room 220, Investigator Eberle had no information that the individuals in the room were trying to escape through a window (TR. 95). There was no attempt to obtain a search warrant for the hotel room (TR. 37, 95). Prior to attempting to open the door and knocking, Investigator Eberle testified he did not hear a deadbolt lock engaging, a toilet flushing, a shower or faucet running, or any shuffling noises (TR. 91-93).

Investigator Eberle attempted to swipe the key card to gain entry into the room (TR. 75). The key card did not work, and Investigator Eberle, believing their position was compromised, blocked the peephole, knocked on the door, and announced "Housekeeping." (TR. 55, 75, 93-94). An individual, later identified as Cruz, partially opened the door and Investigator Leutter showed his badge and announced "Police." (TR. 55, 76). Cruz then attempted to push the door shut and the officers used the ram to gain entry into Room 220 (TR. 55, 76).

There were three individuals in Room 220: Cruz, Ramirez, and Ibarra (TR. 77). Ramirez was dressed similarly to the description Perez and Amaya-Armenta provided to Investigator Eberle (TR. 82). The room had two beds, one of which had the covers partially drawn back, and a television (TR. 30-31). Once in the room, the officers conducted a cursory sweep of the room (Tr. 96). Investigator Eberle made contact with Ibarra and took him out to the hallway to detain him and search Ibarra for weapons (TR. 77, 107). After the room was secure, Investigator Eberle brought Ibarra back into Room 220 (TR. 77). Investigator Eberle scanned the room and noticed on the side of the bed two pairs of shoes

5

which he believed contained contraband (TR. 78, 97; Ex. 7). Investigator Eberle asked Cruz, Ramirez, and Ibarra, in English, "Are these your shoes?" (TR. 80). Cruz responded that they were not his shoes and pointed to a pair of work boots at the foot of the other bed and said those were his shoes (TR. 23, 80; Ex. 2). Cruz's shoes did not contain heroin (TR. 82). Investigator Eberle asked Ramirez about the shoes and Ramirez said they were not his shoes (TR. 23, 80-81). Investigator Eberle asked Ramirez where his shoes were (TR. 81). Ramirez did not respond and just gave Investigator Eberle a blank stare (TR. 81). Investigator Eberle also asked Ibarra about the shoes and pointed at the two pairs of shoes and asked Ibarra whether those were his shoes (TR. 23, 81; Ex. 7). Ibarra replied they were not his shoes (TR. 82). Investigator Eberle testified the shoes were similar to the shoes he saw the men wearing in the surveillance video from Comfort Inn (TR. 68, 82). After Ibarra and Ramirez denied ownership of the shoes, Investigator Rasgorshek considered the shoes abandoned and searched the shoes for contraband and found heroin in each (TR. 39).

## LEGAL ANALYSIS

### A. Standing

The government argued Ibarra and Ramirez did not have standing to challenge the officers' entry into Econo Lodge Room 220. The government argued the guest who rented the hotel room, Cruz, had standing, but his guests, Ibarra and Ramirez, did not. Ibarra and Ramirez argued they both had a legitimate expectation of privacy in the hotel room. Ibarra and Ramirez argued multiple adults were present when Cruz checked into the hotel, there were multiple beds in the hotel room, and the cash used to pay for the room could have been from Cruz, Ibarra, or Ramirez.

To claim Fourth Amendment protection, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *United States v. Boyster*, 436 F.3d 986, 992 (8th Cir. 2006); **see** *United States v. Cresta*, 592 F.Supp. 889 (D.Me.

1984) (guests of motel guests have standing); **see also** *United States v. Blanchard*, 504 F.Supp. 95, 98 (S.D. Fla. 1980) (guest of motel guests have legitimate expectation of privacy).  The reasonableness of the expectation of privacy must have "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas v. Illinois*, 439 U.S. 128, 143-44 n.12 (1978); **see also** *Smith v. Maryland*, 442 U.S. 735, 740-41 (1979).  "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally." *United States v. Barragan*, 379 F.3d 524, 529-30 (8th Cir. 2004) (**quoting** *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994)).

>The Eighth Circuit has recognized that:
>> The Supreme Court has enunciated a two part test to determine whether a person has a legitimate expectation of privacy in the place searched or the object seized.  A court must determine:  (1) whether the petitioner has asserted a subjective expectation of privacy, and (2) whether the petitioner's subjective expectation is objectively reasonable.

*United States v. Stallings*, 28 F.3d 58, 60 (8th Cir. 1994) (internal citations omitted).

The court finds Ibarra and Ramirez had standing to challenge the officers' entry into the hotel room.  When Cruz and the defendants checked into the hotel, all three individuals were visible from the front desk, even though only two individuals approached the front desk.  The room was furnished for multiple occupants.  Merely by having only Cruz's name appear on the receipt does not indicate he was the sole guest at the hotel. The court finds the defendants manifested a subjective expectation of privacy in the hotel room and such expectation of privacy in the hotel room is objectively reasonable.  Therefore, the defendants have standing to challenge the officers' entry into Room 220.

**B.      Warrantless Entry**

The defendants argue the entry into Room 220 on June 29, 2009, violated the defendants' rights under the Fourth Amendment. The defendants argue exigent circumstances were not present as the officers did not have reason to believe the defendants were armed and dangerous. The defendants argue the officers had two-and-a-half hours to obtain a warrant before entering Room 220. Furthermore, the defendants argue there was no evidence that the defendants were attempting to escape or destroy evidence. For these reasons, the defendants seek to suppress any evidence resulting from the warrantless entry into Room 220 on June 29, 2009.

The Fourth Amendment to the Constitution provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Further, "individuals have a reasonable expectation of privacy in their hotel room." *United States v. Williams*, 521 F.3d 902, 906 (8th Cir. 2008). "A basic principle of Fourth Amendment law is that searches and seizures without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (**citing** *Payton v. New York*, 445 U.S. 573, 586 (1980)). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 129 S.Ct. 1710 (U.S. 2009) (**citing** *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is the exigent circumstances exception. *Payton*, 445 U.S. 573. Thus, "absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within." *Groh*, 540 U.S. at 559 (**citing** *Payton*, 445 U.S. 587-88).

"Exigent circumstances are present where lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed." *Williams*, 521 F.3d at 908; **see** *United States v. Ball*, 90 F.3d 260, 263 (8th Cir. 1996). When determining whether exigent circumstances are present, a court must look objectively at what a reasonable police officer would believe in similar circumstances and examine the totality of the circumstances.

8

*Williams*, 521 F.3d at 908; *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). However, "[t]he situations of urgency protected by this exigency exception cannot be created by police officers." *Williams*, 521 F.3d at 908 (internal citation omitted).

There were numerous events leading to the officers' entry into Room 220 on June 29, 2009. After arresting Perez at the bus station, Investigator Eberle found heroin in the bottom of Perez's shoes. Investigator Eberle learned from Perez there was another individual with heroin in his shoes who was traveling with Perez and Amaya-Armenta. Investigator Eberle then discovered there were three missing bus passengers, all traveling to the same destination with one-way tickets, purchased in cash, only minutes before the bus departed. Investigator Eberle had reason to believe Cruz, Ibarra, and Ramirez, all had heroin in their shoes and left the bus station to elude the officers.

When Investigator Eberle arrived at the first hotel, Best Western, Investigator Eberle learned the defendants had not entered the hotel but instead took a cab to a different hotel, the Comfort Inn. When Investigator Eberle and the other officers arrived at the Comfort Inn, they were able to view video surveillance of the defendants. The defendants had yet again not entered the hotel, but had walked to McDonald's. In the video, Investigator Rasgorshek noticed two of the individuals walked "heavily-footed." Investigator Rasgorshek and Investigator Eberle presumed this was because their shoes contained contraband as the shoes were similar to Perez's and Amaya-Armenta's shoes.

At the Econo Lodge, Investigator Eberle learned Cruz, Ibarra, and Ramirez checked into Room 220. Investigator Eberle attempted to enter the room but was unsuccessful. Investigator Eberle, believing their position was compromised, blocked the peephole, knocked on the door, and announced "Housekeeping." Cruz came to the door and partially opened the door. Investigator Leutter showed Cruz his badge and stated "Police." Cruz attempted to shut the door on the officers. The officers then used a ram to gain entry into the room where the officers conducted a protective sweep of room and secured the area.

Analyzing the totality of the circumstances, the officers were justified in believing the defendants were going to destroy evidence. Investigator Eberle reasonably believed the defendants were attempting to elude the officers after they witnessed the officers arrest Perez and Amaya-Armenta. The defendants had purchased one-way tickets to Newark,

New Jersey with cash, and were not from Omaha. The erratic traveling from Best Western, to Comfort Inn, to McDonald's, and finally to the Econo Lodge supports Investigator Eberle's suspicion that the defendants were attempting to elude the officers. Further, after the officers announced their presence, Cruz attempted to shut the door to prevent the officers from entering the room, presumably to escape or destroy evidence. With the above mentioned circumstances in mind, the officers had reason to believe evidence would be destroyed if the officers were to wait outside the room to obtain a warrant. Therefore, the exigent circumstances allowed the officers to enter the room without a warrant to prevent the destruction of evidence.

**C.     Abandonment**

The defendants argue reasonable officers would not have believed the shoes in Room 220 were abandoned property merely because of the fact there were three pairs of shoes and three people in the room who were not wearing shoes. The defendants argued the officers viewed video which showed the defendants wearing the shoes, thus the officers knew the shoes belonged to the defendants. The government argues Ibarra and Ramirez both denied any ownership of the shoes and therefore, do not have a privacy interest in the shoes.

"A warrantless search of abandoned property does not violate the Fourth Amendment, as any expectation of privacy in the item searched is forfeited upon its abandonment." *United States v. James*, 353 F.3d 606, 615-16 (8th Cir. 2003); **see** *Abel v. United States*, 362 U.S. 217, 241 (1960). Alternatively, the defendant may lack standing to contest such a search. **See** *United States v. Thompson*, 359 F. Supp. 2d 862, 865-66 (D. N.D. 2005) (listing cases). "Whether an abandonment has occurred is determined on the basis of objective facts available to the investigating officers, not on the basis of the owner's subjective intent." *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997). To determine whether an item is abandoned, the court evaluates the circumstances including denial of ownership and physical relinquishment of the property.

10

*James*, 353 F.3d at 616; *United States v. Caballero-Chavez*, 260 F.3d 863, 866-67 (8th Cir. 2001).

Here, the defendants denied ownership of the shoes in Room 220. When Investigator Eberle asked the defendants whether the shoes on the ground were theirs, both Ibarra and Ramirez denied ownership of the shoes. Further, when Investigator Eberle asked where the defendants' shoes were, the defendants responded with a blank stare. By denying ownership of the shoes, the defendants abandoned the shoes. **See *United States v. Sanders*, 130 F.3d 1316, 1317-18 (8th Cir. 1997)** ("[The Defendant's] statements to the officers that he did not own the bag were sufficient to constitute abandonment even if the officers knew he was lying. The Fourth Amendment only protects privacy. It does not immunize people who, finding themselves in a compromising situation, voluntarily trade their interest in privacy for a chance to escape incrimination, no matter how unwise the decision may seem in retrospect.").

The court concludes the defendants had no expectation of privacy in the shoes and no standing to challenge the constitutionality of the officers' search. The defendants' statements and actions were sufficient to constitute abandonment of the shoes. Therefore, the officers could reasonably believe the defendants' disclaimers of interest in the shoes were an abandonment of their privacy interest in the shoes, despite evidence that the defendants wore the shoes. **See *Caballero-Chavez*, 260 F.3d 863 (8th Cir. 2001)** (finding the defendants abandoned property when defendants denied ownership). Upon consideration,

**IT IS RECOMMENDED TO SENIOR JUDGE LYLE E. STROM that:**

1. Luis Ibarra-Penuelas' Motion to Suppress (Filing No. 26) be denied.
2. Carlos Ramirez's Motion to Suppress (Filing No. 15) be denied.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to these Findings and Recommendations shall be filed with the Clerk of the Court within fourteen (14) days

after being served with a copy of these Findings and Recommendations. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 16th day of March, 2010.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.